MISSOURI, KANSAS & TEXAS RAILWAY CO. vs
McCLENDON.

Opinion delivered October 30, 1897.

*lroads Killing Stock—Negligence.*

Plaintiff sued defendant railroad company for killing his cow.
There was evidence that a cow was killed in the suburbs of a
town by a loose engine. The track was not fenced. There
was evidence on behalf of plaintiff that the cow ran on the
track thirty yards before she was struck. This was disputed
by defendant's witness who stated that the cow came on the
track thirty feet ahead of the engine, just before she was
struck. That the engine was running about ten miles an hour.
That there was not sufficient time to give signals or stop the
engine after the cow came up on the track. That immediately
upon discovering the cow, the air brakes were applied, and en-
gine stopped in about one car's length after striking the cow.
*Held*, That the court properly refused to take the case from
the jury and instruct a verdict for the defendant.

Appeal from the United States Court for  the  Central District.

YANCEY LEWIS, Judge.

J. H. McClendon sued the Missouri, Kansas & Texas Railway Company for the value of a cow, killed through the alleged carelessness and negligence of said railway company.

Judgment for plaintiff. Defendant appeals.  Affirmed The opinion states the facts.

SPRINGER, C. J.  Several errors are assigned by  the appellant in this case.  But counsel for appellant state i their brief they only desire to press for the consideration o this court one, viz.  "that there was no evidence to suppor the verdict, and that the instruction asked by the defendar for a verdict in its favor should have been  given."    Thi assignment makes it necessary for us to consider  the  testi mony in the case.    Appellant's counsel have printed in the brief a synopsis of all the evidence.    They  certainly sta the case as strongly in their favor as the  facts  will  admi We will quote their synopsis in so far as it relates to the li bility of the defendant company:    "Paul Moffit testified o behalf of  plaintiff that he lived 150  yards  from the pla where the cow was killed, and saw her just as the train wa knocking her off.  She was struck by a  loose  engine.    Di not  hear  bell  rung  or whistle blown, or any alarm give Did not know how fast engine was running, as I  never g out there to see it before it struck the cow, but when I g out there it was carrying the cow over pretty  swift."   Mr Ann Moffit testified on behalf of the  plaintiff  that she sa the  cow  killed.    Saw it struck.    Whistle was not blow Engine was running pretty fast.   She happened to see t

ngine strike the cow, because her children called her. n answer to 'How far was the engine from the cow hen you got there?' she answered:

don't know sir, how far it was. It wasn't so far when I rst seen it. Reckon the cow was about fifty feet from the ngine on track, and was "fixing to go across." She had ot her forefeet up first when I seen her. She then got on ack, and immediately the engine got to her.' Jack Chambers stified on behalf of the plaintiff: 'When I saw her [the ow] she was going down the track, and the engine was ght upon her. Saw the cow before it was struck, and while e was running, and before the engine struck her. The w was 150 yards from the engine, coming towards me, hen I first saw it. Didn't hear any whistle blown or bell ng.' On cross-examination this witness admitted that he d been arrested for stealing coal from the railroad com- ny, and said that he saw the cow running ahead of the gine 'I think 20 or 30 yards,' and that the engine was only or 30 feet from the cow when he first saw it, and that she n about 30 yards before the engine overtook her." This s all the testimony for the plaintiff below, the appellee in s court. The defendant company introduced no wit- sses, but rested its case on the deposition of J. F. Reed, e engineer in charge of the engine which struck the cow. s deposition was given in full, and it is as follows: "On e 18th day of September, 1895, at 2:20 p. m., I ran over a w in the vicinity of Atoka. I don't just positively re- mber, but I think it was a black and white cow. I saw cow near the track some time before I struck her, but wed the train down, and was not running over ten miles hour when I struck the cow. She was not over a rail gth from the engine when I first saw her upon track. I did not see her sooner because she s not on the track, but was near the track on

the left side; and when the engine got upon her she went on the track, and tried to cross over. After the cow was struck, the engine was stopped dead still. My train was running at the rate of ten miles an hour—not any faster—when I first saw the cow. No signals were given Did not have time to give signals before the cow was struck When I saw the cow, I applied the air brakes, and reversed the engine. The track was straight at the place where the the cow was struck. The railroad, at the place where the cow was struck, was through timber country. There was no timber in the immediate vicinity of the track at the point where the animal was struck. I was running down grade. was keeping a lookout, at the time the cow was struck, for obstacles on the track. In this case I made an extraordin any effort to stop the engine, and did come to a full sto about a car length from where the cow was struck, afte striking her. In this case I applied all of the force to th brakes, instead of only a limited force, as is usually done t stop the train, and reversed the engine. This is not usuall done, as it is liable to seriously damage the engine." Th witness, being in the employ of the railway company, ha undoubtedly stated the facts so as to excuse his own condu as far as possible. He speaks of "the train," as if the engi was drawing a train of cars; while the fact is that there w no train, only a detached engine, which could be stopp much more easily than it could have been had a train be attached. He was in the suburbs of the village, where t track was not fenced, and where greater precaution is quired than at other parts of the road. Taking his eviden alone, under all the circumstances, it is not conclusive shown that he used reasonable and ordinary care to disco the animal upon the track, and to avoid striking or injuri it. He says: "My train was running at the rate of miles an hour—not any faster—when I first saw the cow. signals were given. Did not have time to give any sign

before the cow was struck." Before making this statement, he said, "I saw the cow near the track some time before I struck her." Jack Chambers testified for the plaintiff that he saw the cow running ahead of the engine 20 or 30 yards, and "that she ran about 30 yards before the engine struck her." There is a direct conflict between the testimony of Reed and Chambers. If Chambers' statement is true, there was plenty of time to blow the whistle and to stop the engine before the animal was struck, especially if the engine was only running 10 miles an hour when Reed first saw her. Reed testified that he saw her near the track. He must have seen her when she was on the track. Chambers testified that she was running ahead of the engine, and that she ran about 30 yards before the engine struck her. That would allow 90 feet in which to stop an engine running 10 miles an hour. It requires but a casual examination of the testimony in this case to demonstrate: First, that there is evidence in the record tending to show that the employe of the defendant, the engineer, having control of the engine, failed to exercise reasonable care to discover the animal upon the track, and to avoid striking it or injuring it after it was observed; and, second, that there is a conflict in the testimony in the case upon the facts relating to the exercise of reasonable care or to the negligence and carelessness of the defendant's employe in managing the engine at the time the injury complained of was inflicted. In all cases where there is evidence in the record which tends to show the liability of the defendant for the injury committed, and where there is a conflict in the testimony as to the material facts in the case, it is the duty of the trial court to submit the case to the jury. The court therefore properly overruled the motion of appellant's counsel to instruct the jury to return a verdict for the defendant. The court, having refused to take the case from the jury, instructed them upon the law of the case as follows: "The duty was not imposed by law upon the

railway company to fence its track in order to keep animal off it, and the failure to fence its track would not be a groun for recovery in this action. The fact that it killed th animal, if it did do so, would not be a ground for recover The ground alone upon which the plaintiff can recover the negligence of the defendant's employes operating i engine in failing to use reasonable and ordinary care to di cover the animal upon the track, and to avoid striking it injuring it. Reasonable care is that care which an ordinar prudent person would use under like circumstances, and wi like agencies. If you believe from the evidence that by re son of the failure of the defendant's employes to exerci reasonable care to discover the animal upon its track, and avoid striking it or injuring it by slacking the speed of train, or stopping it, or by giving alarm signals, and by t reason of the lack of such care in these particulars the inju resulted, and that it would not have resulted but for t failure of the defendant's employes operating the engine exercise reasonable care, as I have defined it to you in the particulars, then your verdict should be for the plaintiff.

you find that the engineer or the employes operating t train were not negligent, and that there was not a failure exercise reasonable care to discover animals upon the tra and to avoid striking them by slacking the speed of the tr or giving alarms, then your verdict should be for the defer ant. The burden is upon the plaintiff to establish its rig to recover in this case by a preponderance of the eviden Your verdict should be for the party in whose behalf evidence, in your judgment, preponderates upon the iss submitted to you. If you find for the plaintiff, you sho find for the reasonable value of the animal at the time it killed. If you find that the engineer in charge of the fendant's engine at the time in question failed to ring bell or whistle or give other alarms, that fact alone wo not warrant you in finding for the plaintiff unless you f

hat the failure to exercise such care as a reasonable prudent nan would have exercised under such circumstances as the vidence shows to have existed, and unless you further find hat such failure was the proximate cause of the injury to he animal, without which it would not have occurred." In iew of the testimony in the case, we find no error in the instructions, nor in the court's refusal to instruct the jury to eturn a verdict for the defendant. The judgment of the ourt is affirmed.

CLAYTON and THOMAS, JJ., concur. TOWNSEND, J., ot being present, did not participate.